NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

DESIRAE M., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, I.V., S.N., S.N., S.N., *Appellees*.

No. 1 CA-JV 20-0077
FILED 9-10-2020

Appeal from the Superior Court in Maricopa County
No. JD31063
The Honorable David O. Cunanan, Judge

**AFFIRMED**

COUNSEL

Law office of H. Clark Jones, LLC, Mesa
By H. Clark Jones
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Doriane F. Neaverth
*Counsel for Appellees*

---

**MEMORANDUM DECISION**

---

Judge David B. Gass delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge Michael J. Brown joined.

---

**G A S S**, Judge:

¶1        Desirae M. (mother) appeals the superior court's order terminating her parental rights to her biological children ISA, SAN, SER, and SAV (the children). Because reasonable evidence supports the superior court's order, this court affirms the termination of mother's parental rights.

**FACTUAL AND PROCEDURAL HISTORY**

¶2        This court views the evidence, and reasonable inferences to be drawn from it, in the light most favorable to sustaining the superior court's decision. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 13 (App. 2002).

¶3        Mother has a significant history of substance abuse, arrests for drug-related crimes, and domestic violence. In 2011, the Department of Child Safety (DCS) first received a report mother was abusing drugs and neglecting ISA. DCS referred mother to Terros for mental-health and substance-abuse treatment services. Between 2011 and 2017, DCS twice filed dependency petitions on the grounds mother was not addressing her mental-health, domestic-violence, and substance-abuse problems. Each time, mother engaged in counseling and reunification services DCS offered, and DCS dismissed the petitions.

¶4        In early December 2018, mother had a violent altercation with maternal grandmother. During this incident, mother threw several objects at maternal grandmother, but she missed and they instead hit the children. Mother also attempted to hit maternal grandmother with a car. DCS then removed the children from mother's home and filed a third dependency petition.

¶5        In mid-December, the superior court held a preliminary protective hearing during which mother was informed of the reunification services DCS would provide. They included: urinalysis and hair follicle testing; substance-abuse assessment and treatment services; mental-health treatment services; supervised visitation services; and transportation.

Mother also agreed to self-refer to Potter's House for individualized counseling with a domestic-violence component.

¶6        In January 2019, DCS provided mother with referrals for urinalysis and hair-follicle testing. Mother, however, did not participate in any drug testing and was arrested twice that month for possession of methamphetamine. The following month, she was arrested two more times for possession of methamphetamine and heroin. Mother was arrested yet again in March when police found methamphetamine and drug paraphernalia in a U-Haul vehicle she failed to return. Mother entered guilty pleas to lesser-included offenses for the five charges and was sentenced to six-months' incarceration, beginning in April 2019, and was placed on probation upon her release.

¶7        During her incarceration, mother utilized some services offered by the jail, including the Mosaic intensive substance-abuse treatment program. She also engaged in weekly supervised phone calls with the children but did not have any in-person visits with them. In October 2019, mother completed her sentence. The following month mother was again arrested, and her probation revoked, when security personnel at the probation office discovered methamphetamine and marijuana in her purse.

¶8        On November 22, 2019, DCS moved to terminate mother's parental rights based on the children's out-of-home placement for more than nine months. The superior court held a contested severance hearing on January 29, 2020. Mother was still incarcerated at the time of the hearing. The superior court issued its findings of fact, conclusions of law, and order terminating mother's parental rights on February 24, 2020. The superior court found DCS "made a diligent effort to provide reunification services," but mother failed to participate in those services. The superior court also found termination was in the children's best interests. Mother timely appealed. On appeal, Mother does not challenge the best interests' determination. This court has jurisdiction under Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 8-235.A, 12-120.21.A.1.

## ANALYSIS

¶9        A superior court may sever a parent's rights if clear and convincing evidence establishes at least one statutory ground. *See* A.R.S. §§ 8-533.B, 8-537.B; *see also Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000). Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and

resolve disputed facts," this court will affirm an order terminating parental rights if reasonable evidence supports the order. *See Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (internal citations omitted).

**¶10**　　　Under Arizona law, the parental relationship may be terminated if (1) DCS "has made a diligent effort to provide appropriate reunification services," (2) the children have "been in an out-of-home placement for a cumulative total period of nine months or longer," and (3) "the parent has substantially neglected or wilfully refused to remedy the circumstances that cause the child[ren] to be in an out-of-home placement." *See* A.R.S. § 8-533.B.8(a).

**¶11**　　　Mother does not dispute the time the children spent in an out-of-home placement or her inability to remedy the circumstances causing the out-of-home placement. Instead, mother challenges the sufficiency of services offered by DCS, and argues the superior court erred in finding she "substantially neglected or willfully refused to participate in reunification services." Mother essentially asks for a reweighing of the evidence, which this court will not do. *See Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 151, ¶ 18 (2018). Contrary to mother's arguments on appeal, the superior court's decision is supported by reasonable evidence.

**¶12**　　　During the December 2018 hearing, mother was told of the services DCS would offer to reunite her with the children and mother agreed to self-refer "to Potter's House for individual counseling with a domestic violence component." Mother scheduled the intake assessment but did not attend the appointment and made no attempt to reschedule either before or after her six-month incarceration. Mother also scheduled, but did not attend, a substance-abuse intake assessment with Terros. Mother testified she was unable to attend the appointment because of her incarceration. The record does not support this assertion. Mother's appointment was scheduled for April 26, 2019. Her six-month incarceration term began three days later on April 29, 2019. Mother also failed to participate in any urinalysis or hair follicle testing to demonstrate her sobriety. Further testimony and exhibits presented to the superior court showed mother was arrested for six separate drug-related offenses in 2019 despite being incarcerated for approximately eight months of the year.

**¶13**　　　Though mother took some positive steps during her six-month incarceration, e.g. completing the Mosaic Program, these steps do not establish that the superior court abused its discretion in concluding mother substantially neglected or willfully refused to remedy her addiction. *See In re Maricopa Cnty. Juv. Action No. JS-501568*, 177 Ariz. 571,

577 (App. 1994). "Termination is not limited to those who have *completely* neglected or willfully refused to remedy" the circumstances causing out-of-home placement. *Id.* at 576 (emphasis original). Indeed, when a parent "makes only sporadic, aborted attempts to remedy her addiction," the superior court "is well within its discretion in finding substantial neglect and terminating parental rights on that basis." *See id.*

¶14        The children's best interests are not served by waiting indefinitely for mother to become a capable and effective parent. *See id.* at 577. DCS developed and set a case plan of family reunification for mother. Despite the support services offered her, mother did not follow the reunification plan.

## CONCLUSION

¶15        Mother failed to show the superior court's findings were not supported by trial evidence or otherwise were an abuse of discretion. Accordingly, the superior court's order terminating mother's parental rights to the children is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:    AA